TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00560-CV






The State of Texas, Appellant



v.



Joseph F. Barbee, f/d/b/a Joseph F. Barbee Enterprises, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 95-13821, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING 






 The State of Texas sued Joseph F. Barbee in his individual capacity in November
1995, seeking to recover delinquent motor fuel taxes, interest, and penalties Joseph F. Barbee
Enterprises, Inc. allegedly owed for gasoline and diesel fuel sales made between March and July
1989. Barbee moved for summary judgment, maintaining that he had proven as a matter of law
that the State's suit was barred by the statute of limitations and that there was no evidence of one
or more of the essential elements of the State's claims against him. Barbee also argued that he
had conclusively established an affirmative defense to liability. The trial court granted Barbee's
motion, and the State appeals by six points of error. We will affirm in part and reverse and
remand in part.


THE CONTROVERSY


 In 1989, the Texas Comptroller of Public Accounts ("the Comptroller") began
conducting two simultaneous tax audits of Joseph F. Barbee Enterprises, Inc. ("the Corporation"),
a wholesale distributor of gasoline and diesel fuel. One audit involved the gasoline sales the
Corporation made between October 1985 and September 1989; the other encompassed the diesel
fuel sales the Corporation made during that same time period. 

 The audits concluded in January or February 1990, at which time the Comptroller
determined that the Corporation had under-reported the taxes that had become due and payable
in March 1989 and failed to report any of the taxes that became due and payable between April
and September 1989. Five years later, on January 11, 1995, the Comptroller issued two "Notices
of Tax Due" assessing against Joseph F. Barbee ("Barbee"), the Corporation's president and
director, over one million dollars in unpaid taxes, penalties, and interest allegedly owed by the
Corporation. The Comptroller then filed two tax liens against Barbee, individually, on February
20, 1995. On November 3, 1995, the State filed suit against Barbee, seeking to hold him
personally liable for the unpaid fuel taxes, penalties, and interest. (1) 

 Four years passed before the case was called to trial. Before the hearing in August
1999, Barbee filed a motion for summary judgment along with supporting affidavits, claiming that
he had proven as a matter of law that the State's suit was barred by the statute of limitations and,
furthermore, that he had conclusively established a statutory defense to personal liability. At the
same time, Barbee argued that he was entitled to a no-evidence summary judgment because there
was no evidence to support one or more of the essential elements of the State's claims against him. 
The trial court granted Barbee's motion for summary judgment without specifying the grounds
for its ruling. The State appeals, contending that summary judgment was improper because: (1)
Barbee failed to establish as a matter of law that the Comptroller's assessment and suit for
delinquent taxes were barred by the statute of limitations; (2) Barbee failed to conclusively
establish an affirmative defense to liability; (3) a genuine issue of material fact exists regarding
whether Barbee may be held personally liable for the Corporation's debts pursuant to sections
111.016 and 171.255 of the Tax Code; and (4) the trial court improperly sustained Barbee's
objection to a portion of the State's summary judgment proof.


DISCUSSIONStandard of Review

 To prevail on a traditional motion for summary judgment, a party must conclusively
establish that there is no genuine question of material fact and show that he is entitled to judgment
as a matter of law. See Tex. R. Civ. P. 166a(c). The movant must either negate at least one
essential element of the non-movant's cause of action or prove all essential elements of an
affirmative defense. See Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995). Once the movant has established a right to summary judgment, the non-movant has the
burden to respond to the motion for summary judgment and present to the trial court any issues
that would preclude summary judgment. See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979). Because the burden of proof is on the movant, we must view the
evidence and its reasonable inferences in the light most favorable to the non-movant and resolve
all doubts about the existence of a material fact against the movant. See Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). When a summary judgment does not
specify or state the grounds relied on, as in the instant case, the summary judgment will be
affirmed on appeal if any of the grounds presented in the motion are meritorious. See Harwell
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).

 After an adequate time for discovery, a party may also move for summary judgment
on the ground that there is no evidence of one or more essential elements of a claim or defense
on which an adverse party would have the burden of proof at trial. See Tex. R. Civ. P. 166a(i). 
Unlike a traditional motion for summary judgment, the movant in a no-evidence motion for
summary judgment does not bear the burden of establishing each element of his own claim
or defense. See Grant v. Southwestern Elec. Power Co., No. 06-98-00159-CV (Tex.
App.--Texarkana March 30, 2000) (opinion on rehearing). Instead, the non-movant has the burden
of presenting evidence raising a genuine fact issue on the challenged elements. See id. We view
the proof in the light most favorable to the non-movant, disregarding all contrary proof and
inferences. See Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.--San Antonio 1998,
pet. denied). If the non-movant presents more than a scintilla of probative evidence so as to raise
a genuine issue of material fact, it is improper to grant a no-evidence motion for summary
judgment. See Moore, 981 S.W.2d at 269; Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70-71
(Tex. App.--Austin 1998, no pet.). More than a scintilla of evidence exists when the evidence
"rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions." See Havner, 953 S.W.2d at 711. 


Statute of Limitations

 In its first two points of error, the State contends that the period of limitations for
assessing any delinquent taxes against the Corporation was tolled by the Corporation's alleged
fraud, failure to report, and gross under-reporting of taxes and that its suit was timely filed after
the taxes were assessed. We agree.

 The gasoline and diesel fuel taxes the State seeks to collect are imposed by Title
2 of the Texas Tax Code ("the Code"). See Tex. Tax Code Ann. § 153 (West 1992 & Supp.
2000). Section 111.201 of the Code provides, "No tax imposed by this title may be assessed after
four years from the date that the tax becomes due and payable." Id. § 111.201 (West Supp.
2000). (2) However, this four-year limitations period is tolled indefinitely in certain situations. 


 The limitation provided by Section 111.201 of this code does not apply and
the comptroller may assess a tax imposed by this title at any time if . . . no report
for the tax has been filed . . . [or] information contained in the report of the tax
contains a gross error.



Id. § 111.205(a)(1)-(3) (West Supp. 2000) (emphasis added). "Gross error" is an error where,
after its correction, "the amount of tax due and payable exceeds the amount initially reported by
at least 25 percent." Id. § 111.205(b) (West Supp. 2000).

 Barbee concedes that the Corporation did not file a tax report for the period of
April to July 1989. (3) Consequently, the statute of limitations for assessing the taxes due for those
months was tolled indefinitely. See Tex. Tax Code Ann. § 111.205(a)(2). Although the
Corporation did file a report for the March 1989 taxes, the Comptroller's audit indicated that this
report contained a "gross error" because it under-reported the taxes the Corporation owed for that
month by at least twenty-five percent. Thus, the statute of limitations for assessing the taxes due
for March 1989 was tolled as well. See id. § 111.205(a)(3).

 In his motion for summary judgment, Barbee relied on the statute of limitations for
bringing suits to recover delinquent taxes, penalties, and interest. Section 111.202 provides:


 At any time within three years after a deficiency or jeopardy determination
has become due and payable or within three years after the last recording of a lien,
the comptroller may bring an action in the courts of this state . . . to collect the
amount delinquent together with penalties and interest. 



Id. §111.202 (West 1992) (emphasis added). Barbee cites this provision and refers to an October
1989 "Tax Statement of Account," which he contends is the deficiency or jeopardy determination
that began the period of limitations for filing suit on the taxes that became due and payable in
March 1989. If Barbee is correct, the time for filing suit on the March 1989 taxes would have
expired in September or October 1992. 

 The State counters that for purposes of this statute, the "Notices of Tax Due"
issued on February 7 and January 11, 1994, served as the deficiency or jeopardy determinations
for the March 1989 taxes. The State also points out that it filed a tax lien against Barbee for the
first time on February 20, 1995. Because each of these events occurred less than three years
before suit was filed on November 3, 1995, the State contends that its suit was timely filed and
not barred by the statute of limitations. We agree.

 As the State observes, the "Tax Statement of Account" issued in October 1989
primarily served to inform the Corporation of its account balance. It did not purport to be an
assessment. Furthermore, the "Tax Statement of Account" was addressed to the Corporation,
whereas the "Notices of Tax Due" were directed to Barbee individually. The "Notices of Tax
Due" state unambiguously: "THIS IS YOUR OFFICIAL TAX LIABILITY NOTIFICATION
WHICH IS DUE AND PAYABLE ON RECEIPT." These notices then inform the taxpayer of
the right to request a hearing to challenge the amount assessed. 

 More importantly, we observe that no lien was filed against Barbee until February
1995. The statute limiting the period allowed for filing suit provides that the State may file suit
"[a]t any time within three years after a deficiency or jeopardy determination has become due and
payable or within three years after the last recording of a lien." Id. § 111.202 (emphasis added). 
Even if we were to assume Barbee is correct that the October 1989 "Statement of Account" was
a deficiency or jeopardy determination for purposes of section 111.202, the State nevertheless
filed its lien against Barbee on February 20, 1995, just nine months before it filed suit. Because
it filed suit within three years after this "last recording of a lien" and within three years after
sending Barbee the "Notices of Tax Due," we conclude that the State's suit on the March 1989
taxes is not barred by any statute of limitations.

 With respect to the taxes that became due and payable between April and July
1989, it is undisputed that no assessment of deficient taxes was made against the Corporation or
Barbee individually until February 1994 and January 1995, respectively. Likewise, it is clear that
no lien was filed against Barbee for the taxes that became due and payable during those months
until February 1995. As stated previously, suit was filed on November 3, 1995, clearly within
three years of the filing of all assessments and liens. Thus, we conclude that this portion of the
State's suit also was not barred by any statute of limitations. We sustain appellant's first two
points of error.


Barbee's Personal Liability


 Although the State's suit is not barred by any statute of limitations, the
requirements of sections 111.016 and 171.255 nevertheless must be satisfied before the State may
hold Barbee individually liable for the Corporation's delinquent taxes, penalties, and interest. See
id. § 111.016(a) (West Supp. 2000) & § 171.255(a) (West 1992). In its third and fourth points
of error, the State argues that summary judgment was improper because there are genuine issues
of material fact regarding whether Barbee may be held individually liable for the Corporation's
debts pursuant to either of these provisions. In its fifth point of error, the State maintains that
Barbee failed to establish as a matter of law the affirmative defense provided by section
171.255(c)(1), (2). See id. § 171.255(c)(1), (2) (West 1992). With the exception of Barbee's
liability for the taxes that became due and payable in March 1989, we agree with the State that
a genuine issue of material fact exists precluding rendition of summary judgment.

 We first address the issue of Barbee's personal liability for the taxes that became
due and payable in March 1989. Section 111.016(a) provides:


 Any person who receives or collects a tax or any money represented to be
a tax from another person holds the amount so collected in trust for the benefit of
the state and is liable to the state for the full amount collected plus any accrued
penalties and interest on the amount collected.



Id. § 111.016(a) (emphasis added). This is the sole provision on which the State relies in seeking
to hold Barbee individually liable for the March 1989 taxes, and the State argues that a genuine
issue of material fact exists with respect to this basis for liability. The record, however, lends no
support to the State's contention. 

 In support of its argument, the State points to three pieces of evidence, namely the
corporate tax returns signed by Barbee, an affidavit from the individual who conducted the audits,
and the invoices evidencing the Corporation's fuel sales and purchases. None of these documents,
however, indicate that Barbee was the individual who actually collected or received the
Corporation's taxes. Nor do they show the specific amount of tax collected but not remitted. In
order to impose individual liability on a corporate officer or director under this provision, the
State must prove the amount of taxes that the officer or director actually received or collected. 
See N.S. Sportswear, Inc. v. State, 819 S.W.2d 230, 232-33 (Tex. App.--Austin 1991, no writ). 
Here, the record contains no such evidence. 

 Although the tax returns indicate that Barbee was the individual who signed the
Corporation's tax returns, they do not constitute evidence that Barbee was the person who actually
collected or received the motor fuel taxes on the Corporation's behalf. Likewise, the invoices
showing that the Corporation purchased and sold motor fuel and collected the concomitant taxes
do not prove that Barbee collected or received the taxes--or even that he was the person responsible
for collecting or receiving the taxes. Quite simply, there is no evidence that Barbee controlled,
handled, or even had knowledge of the taxes collected. Cf. Stoker Management, Inc. v. Sharp,
958 S.W.2d 286, 288 (Tex. App.--Austin 1997, pet. denied) (holding corporation's president
personally liable under section 111.016(a) where he conceded having control and actual
knowledge of taxes collected and admitted paying those funds to third parties rather than to State). 
In the absence of competent evidence linking Barbee to the actual receipt or collection of the taxes
for March 1989, there is no issue of material fact regarding Barbee's liability under section
111.016(a). Therefore, the trial court correctly granted summary judgment in favor of Barbee on
the State's suit for the taxes, penalties, and interest owed for March 1989. Accordingly, we
overrule appellant's third point of error. 

 Next, we address Barbee's liability for the taxes that became due and payable
between April and July 1989. To hold Barbee individually liable for these taxes and the
accompanying penalties and interest, the State relies on section 171.255, which provides in
pertinent part:

 If the corporate privileges of a corporation are forfeited for the failure to
file a report or pay a tax or penalty, each director or officer of the corporation is
liable for the debt of the corporation that is created or incurred in this state after
the date on which the report, tax, or penalty is due and before the corporate
privileges are revived. The liability includes liability for any tax or penalty
imposed by this chapter on the corporation that becomes due and payable after the
date of the forfeiture. 



Tex. Tax Code Ann. § 171.255(a). Thus, Barbee may be held individually liable under this
section only if the State is able to prove that Barbee was an officer or director of the Corporation
and that the Corporation incurred tax debts between the time its privileges were revoked on March
16, 1989 and the date on which those privileges were revived, July 11, 1989. (4) Here, there is
more than a scintilla of evidence of both of these elements.

 Although Barbee explains that no taxes were paid or reported from April to July
1989 because he had sold the Corporation on April 1 and was no longer an officer or director of
the Corporation after that point, the State introduced evidence to the contrary. The record
contains tax reports signed by Joseph Barbee on behalf of the Corporation on April 25, 1989; a
letter (5) Barbee purportedly wrote on July 17, 1989 to one of the Corporation's suppliers in which
Barbee represented that he was still president of the Corporation; and invoices indicating that the
Corporation continued to buy and sell motor fuel well after April 1, 1989. Taken together, this
evidence is sufficient to create a fact issue concerning whether the Corporation was sold on April
1, 1989 or whether Barbee remained its president and director during its continued operations. 
This conflicting evidence calls into question the veracity of Barbee's explanation that some
unidentified entity was unlawfully using the Corporation's tax permit identification number. 
Certainly, receipts containing a corporation's tax permit number are sufficient to create a
reasonable inference that the corporation to whom that tax permit number is assigned was the
entity purchasing or selling the fuel. We conclude that these records, together with the other
evidence, are sufficient to preclude rendition of a no-evidence summary judgment. We sustain
appellant's fourth point of error.

 The only alternative basis for rendition of summary judgment in Barbee's favor is
if he proved as a matter of law the affirmative defense provided in section 171.255(b) of the Code. 
See id. § 171.255(b)(1), (2) (West 1992). This subsection provides that a director or officer is
not liable for a debt of the corporation if he can show that the debt was created or incurred "over
the director's objection" or "without the director's knowledge and that the exercise of reasonable
diligence to become acquainted with the affairs of the corporation would not have revealed the
intention to create the debt." Id. 

 As appellant points out, the only evidence in support of this defense consisted of
Barbee's affidavit and deposition testimony, which Barbee contends proves as a matter of law that
all the taxes allegedly owed by the Corporation were incurred over his objection or without his
knowledge and that the exercise of reasonable diligence would not have alerted him to the
intention to create such a tax debt. Again, Barbee testified in his affidavit that the letter
purportedly written to one of the Corporation's suppliers was a fraud; some unauthorized person
was using the Corporation's tax permit number to make sales; he had sold the Corporation on
April 1, 1989; and that he was no longer an officer or director after April 1, 1989. However, as
previously discussed, this evidence was contradicted by the State's summary judgment evidence,
namely the invoices indicating that the Corporation in fact did continue to buy and sell motor fuel
after April 1, 1989, as well as the letter Barbee seeks to discredit. Taking all the evidence
favorable to the State as true, and indulging every reasonable inference in favor of the State, we
conclude that a material issue of fact remains as to whether these tax debts were incurred over
Barbee's objection or without his knowledge, or whether the exercise of reasonable diligence
would have revealed the intention to create the debt. Consequently, Barbee failed to prove as a
matter of law the defense available under section 171.255(b), and it was error for the trial court
to render summary judgment in favor of Barbee on this basis. We sustain appellant's fifth point
of error.


CONCLUSION

 Although we hold that the statute of limitations does not bar any of the State's
claims, we conclude that the trial court correctly granted a no-evidence summary judgment on the
State's suit with regard to Barbee's personal liability pursuant to section 111.016(a) for the March
1989 taxes; to this extent, we affirm the trial court's judgment. However, because a material fact
issue exists concerning whether Barbee may be held personally liable pursuant to section 171.255
for any taxes due between April and July 1989, the trial court's grant of summary judgment was
improper. Therefore, we reverse that portion of the judgment and remand the cause to the trial
court for further proceedings.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: June 15, 2000

Do Not Publish
1. We note that the State has never sued the Corporation for the delinquent taxes. 
2. Taxes for each month become due and payable on the twenty-fifth day of the month following
their collection. See Tex. Tax Code Ann. § 153.118(a) (West Supp. 2000).
3. Barbee contends that he was not in business during those months and consequently had no
tax collections or liability. However, there is evidence in the record raising a disputed fact issue
on this point.
4. Both parties agree that the Corporation's privileges were revoked on March 16, 1989 and
then revived on July 11, 1989. 
5. In its sixth point of error, the State complains that the trial court erred in granting Barbee's
objection to the State's summary judgment proof. However, although Barbee made a timely
objection to this evidence, he failed to obtain a ruling on his objection. We therefore consider in
our analysis the letter included in the record. See Tex. R. App. P. 33.1(a)(2); Tex. R. Evid.
103(a)(1).



 these records, together with the other
evidence, are sufficient to preclude rendition of a no-evidence summary judgment. We sustain
appellant's fourth point of error.

 The only alternative basis for rendition of summary judgment in Barbee's favor is
if he proved as a matter of law the affirmative defense provided in section 171.255(b) of the Code. 
See id. § 171.255(b)(1), (2) (West 1992). This subsection provides that a director or officer is
not liable for a debt of the corporation if he can show that the debt was created or incurred "over
the director's objection" or "without the director's knowledge and that the exercise of reasonable
diligence to become acquainted with the affairs of the corporation would not have revealed the
intention to create the debt." Id. 

 As appellant points out, the only evidence in support of this defense consisted of
Barbee's affidavit and deposition testimony, which Barbee contends proves as a matter of law that
all the taxes allegedly owed by the Corporation were incurred over his objection or without his
knowledge and that the exercise of reasonable diligence would not have alerted him to the
intention to create such a tax debt. Again, Barbee testified in his affidavit that the letter
purportedly written to one of the Corporation's suppliers was a fraud; some unauthorized person
was using the Corporation's tax permit number to make sales; he had sold the Corporation on
April 1, 1989; and that he was no longer an officer or director after April 1, 1989. However, as
previously discussed, this evidence was contradicted by the State's summar